STATE EX REL. FRED SPEARMAN ET AL., Relators, v. MISSOURI STATE HIGHWAY COMMISSION ET AL.—53 S. W. (2d) 282.

Court en Banc, October 5, 1932.

*Irwin & Bushman* for relators.

*John W. Mather* and *John C. Collett* for respondents.

*Morgan M. Moulder, L. Newton Wylder* and *R. L. Hecker; Amici Curiae.*

HENWOOD, J.—This is an original proceeding in mandamus against the State Highway Commission and the members thereof in their official capacity, by which fifteen resident taxpayers of Miller County, acting for themselves and for other persons of like interests, seek to compel the State Highway Commission to erect at the cost of the State a bridge across the Osage River in Miller County, where State Highway No. 17 is intersected by said river.

An alternative writ of mandamus has been issued, respondents have filed their return thereto, and relators have filed a motion for judgment on the pleadings.

In addition to the briefs filed by counsel for relators and respondents, Messrs. Morgan M. Moulder, L. Newton Wyler and R. L. Hecker, members of the bar, have filed suggestions, as *amici curiae*, in support of relators' position herein.

It is admitted that State Highway No. 17, which extends in a northerly and southerly direction through Miller County, is one of the secondary state highways provided for in the Centennial Road Law and is now being constructed as such; that said highway is intersected at Tuscumbia, in Miller County, by the Osage River, which flows from the west in an easterly direction through the central part of Miller County; that said river is navigable at the point and above and below the point where it intersects said highway; that the navigable portions of said river are entirely within this State; and that at the point where said highway is intersected by said river there is now and for many years has been a privately owned toll bridge used by travelers in crossing said river at said point.

The question presented for our determination is whether under existing law the State Highway Commission may be compelled by a mandate of this court to erect at the cost of the State a bridge such as the one sought by relators, that is, *a bridge across a navigable river at a point where such a river intersects a secondary state highway.*

In considering this question we have reviewed the development of our state highway law from 1921 to the present time.

We will first refer to certain parts of Sections 8117, 8119 and 8120, Revised Statutes 1929 (originally Sections 26, 28 and 29 of the Centennial Road Law), which follow:

"Section 8117. . . . *All available funds, including federal aid, shall be apportioned and expended upon the state road system as follows:* To each county shall be apportioned an amount to be ascertained by multiplying the total number of miles of the state-wide system of roads in such county, as designated herein, by $6,000:

*Provided,* that if this amount is insufficient to complete such state highways of the type needed to serve the needs of said county of a minimum type of properly bound gravel road or its equivalent of at least twelve feet in surface width and built up to the standard required by the federal government, such additional money shall be added as shall be required to complete the construction of the state highways and connect them with like roads of surrounding counties and states. In making the apportionment as herein set forth, the commission, after estimating the amount required to build such roads in each county, shall use such estimates as a basis of apportionment of two-thirds of such funds, but in no case shall such estimates be less than $6,000 per mile; the intention being that the commission shall make such apportionment for the several counties as shall result in the construction of roads for all counties on the basis of their proportionate mileage, *irrespective of the difference in cost of construction of the said properly bound gravel roads*: Provided further, that not to exceed one-third of all such funds as they become available may be used in the construction of approximately fifteen hundred miles of higher type roads connecting the principal population centers, which roads shall be designated before any apportionment herein provided for is made: *Provided, however,* that for the construction of such higher type roads, not to exceed $6,000 per mile thereof shall be taken from the said remaining two-thirds of such available funds. . . . [Laws 1921, 1st Ex. Sess., p. 131, sec. 26.]'' (Our italics.)

"Sec. 8119. . . . *Bridges and culverts over all nonnavigable streams* which are located at points where such streams intersect the state highway system shall be regarded as part of the state highway. [Laws 1921, 1st Ex. Sess., p. 131, sec. 28.]'' (Our italics.)

"Sec. 8120.—There is hereby created and established a state wide connected system of hard surfaced public roads extending into each county of the state, which shall be located, acquired, constructed, reconstructed and improved and ever after maintained as public roads, and the necessary grading, hard surfacing, bridges and culverts therefor shall be constructed by the State of Missouri. Such state wide connected system of hard surfaced roads shall be known as the 'state highway system,' and shall consist of highways along the following described routes: . . .

"Miller County.—Beginning at the Cole-Miller County line east of Eldon, thence west to Eldon and southwest to Camden-Miller County line by way of Bagnall. Beginning at the Morgan-Miller County line northwest of Eldon, thence in a southeasterly direction via Eldon, *Tuscumbia, Iberia via Petrican ford of Big Tavern creek to the Pulaski-Miller County line north of Crocker. Beginning at Tuscumbia, thence northwest to Cole-Miller County line near Eugene.* (Our

italics—showing route of State Highway No. 17 through Miller County.). . . . [Laws 1921, 1st Ex. Sess., p. 131, sec. 29.]''

Taking these sections in reverse order: Section 8120 provides for a connected system of state highways through every county of the State and designates the routes of all secondary state highways, including the route of the secondary state highway now known as State Highway No. 17, extending through Miller County in a northerly and southerly direction as hereinabove indicated. Section 8119 provides that *"bridges and culverts over all nonnavigable streams"* at points where such streams intersect a state highway shall be regarded as parts of such state highways; and Section 8117 provides, among other things, that, for the construction of secondary state highways and for the purpose of reimbursing counties which have constructed such highways, ''all available funds'' shall be allotted to the counties on a proportionate mileage basis, irrespective of the difference in cost of a minimum type of properly bound gravel roads, and that the estimated cost of such roads shall in no case be less than $6,000 per mile.

■ The Centennial Road Law as originally enacted did not expressly authorize the State Highway Commission to allot to any county any funds for the erection of bridges over navigable streams as parts of secondary state highways, and we find nothing in the original provisions of said law to indicate such legislative intent. If the framers of said law in its original form had intended to include bridges over navigable streams as parts of secondary state highways, we think they would have so provided, in Section 28 of said law (now Sec. 8119, R. S. 1929), in connection with the provision that *"bridges and culverts over all nonnavigable streams"* which are located at points where such streams intersect the state highway system shall be regarded as part of the state highway,'' instead of leaving out of said provision any reference to bridges over navigable streams.

Moreover, in 1923 there was added to the Centennial Road Law a new section (Laws 1923, p. 354, now Sec. 8139, R. S. 1929) which provides, among other things, *"that bridges or parts of bridges over navigable streams* or the cost or estimate(d) cost or value of such bridges shall in no case be taken into consideration by the State Highway Commission as a basis of apportionment of road funds to the various counties.''

It seems to be conceded by relators, if not by *amici curiae*, that bridges over navigable streams were not originally intended to be included as parts of secondary state highways, for relators say, in their brief: ''There was a time in the State's program of road building when it was considered the State's money should not be spent bridging the navigable rivers of the State, because a great part of the funds available would be consumed in bridge building without taking Mis-

souri out of the mud. The construction of highways was more important than the construction of bridges in the beginning.''

■ But, relators and *amici curiae* both insist that the State Highway Commission is authorized to construct bridges over navigable streams as parts of secondary state highways by Section 44a of Article IV of the Constitution (adopted November 6, 1928), to which we will now refer.

Said constitutional amendment (in the first paragraph) says, in part:

''In addition to the exceptions made and created in Section 44, the General Assembly shall, for the purpose of locating, establishing, acquiring, constructing, widening and improving hard-surfaced public highways in the State and each county thereof, and of acquiring materials therefor and *for the purpose of locating and constructing bridges across the rivers and waters of the State* and of participating in the construction of toll-free, interstate bridges, have the power to contract or authorize the contracting of a debt or liability on behalf of the State and to issue bonds or other evidences of indebtedness therefor not exceeding in the aggregate one hundred and thirty-five millions of dollars—said aggregate being inclusive of the sixty millions of dollars heretofore authorized and issued for the construction of hard-surfaced public highways. . . .'' (Our italics.)

And said constitutional amendment (in the third paragraph) provides that the proceeds of said additional bond issue ''shall be expended under the direction and supervision of the State Highway Commission,'' in part, ''to *complete* and widen or otherwise improve *the state system* of primary and *secondary highways as designated and laid out under existing law.* . . .'' (Our italics.)

As hereinabove shown, State Highway No. 17, *as designated and laid out* in the Centennial Road Law, extends in a northerly and southerly direction through Miller County and across the Osage River. And, manifestly, the express authority of the State Highway Commission, under the constitutional Amendment of 1928, to locate and construct *''bridges across the rivers and waters of the State''* and *''To complete . . . secondary highways as designated and laid out under existing law,''* includes the authority to construct a bridge across the Osage River as a part of State Highway No. 17, for said highway will never be completed until such bridge is constructed.

■ However, the progress of the work of completing the state highway system, that is, the time when any particular part of said work should be done, is left to the discretion of the State Highway Commission, and the exercise of that discretion cannot be controlled by mandamus. Nothing to the contrary appearing in the record before us, we must assume that the State Highway Commission will

exercise its authority to construct a bridge across the Osage River as a part of State Highway No. 17, and that it will not abuse its discretion in fixing the time of commencing or of completing the construction of such bridge.

A peremptory writ of mandamus is denied. All concur.