STATE OF MISSOURI at the relation of KANSAS CITY, MISSOURI, and CLAY COUNTY, MISSOURI, Relators, v. STATE HIGHWAY COMMISSION OF MISSOURI.—163 S. W. (2d) 948.

Court en Banc, June 13, 1942.

Rehearing Denied, July 28, 1942.

*William E. Kemp, Guy B. Park, Conn Withers, James S. Simrall, Lawson & Hale* and *Ilus M. Lee* for relators.

*Louis V. Stigall, Lue C. Lozier, Wallace V. Wilson, Jr.,* and *Wilkie Cunnyngham* for respondent.

872

HAYS, J.—Petition for mandamus filed by the State at the relation of Kansas City and Clay County against the State Highway Commission. Our alternative writ issued and return thereto was filed, upon which the issues were joined. Thereafter the Honorable Walter N. Davis was appointed as Special Commissioner, heard evidence and filed his report, consisting of findings of fact, conclusions of law, and recommendations as to the judgment of the court. To this report the respondent has excepted.

For many years prior to July, 1927, there had existed a bridge across the Missouri River at Kansas City known in the present record as the A. S. B. Bridge. It was a structure of two decks, the lower deck being used for railroad tracks and the upper deck devoted to streetcar tracks and pedestrian and vehicular traffic. The bridge had been erected under authority of a Congressional Act and a permit issued by the War Department. It was owned by a private corporation known as the North Kansas City Bridge and Railroad Company, which leased the lower deck for railroad use and also leased the streetcar tracks on the upper deck. The bridge company collected tolls from pedestrians and operators of vehicles crossing the upper deck of the bridge. It also had certain agreements with the utility companies for telephone, telegraph, electric-power cables and other similar structures in connection with the bridge. It was desired by the people of Kansas City and Clay County to make this bridge a free one for ordinary vehicular and pedestrian traffic. Bond issues for this purpose were voted by both the county and the city. On the 14th day of July, 1927, a contract was executed between the North Kansas City Bridge and Railroad Company, the city, the county of Clay and the State Highway Commission. This document is long and involved but its pertinent provisions may be summarized: It provided that the city should pay to the bridge company $1,350,000, the county paying to the company the sum of $150,000. In consideration of which payments and the other covenants and conditions set out the company conveyed to the city an undivided 9/10 interest and to the county an undivided 1/10 interest "in and to said bridge, and every part thereof, including the approaches thereto, . . . subject to the reservations herein made, and upon the conditions herein stated." Such conveyances were for the purpose of establishing a free public highway over the upper deck of said bridge. It was agreed that the bridge company should retain the right to the lower deck and also a right of way for a double-track electric railroad on the upper deck and the right to continued use of the bridge for telephone, telegraph,

electric-power cables and other utilities. By the same instrument the city and county conveyed all of the interest purchased by them from the bridge company to the State Highway Commission "free and without consideration." The commission, by the terms of the instrument, agreed "to maintain perpetually the said bridge and the approaches thereto and every part thereof (except as otherwise herein expressly provided) in good condition and repair." Excepted from this maintenance, however, were: (a) the rails, ties, and necessary rail fastenings on both upper and lower decks; (b) the right of way on the north approach to the bridge used for tracks; (c) channel lights and the machinery used to operate the lift span; (d) trolleys and all other power, telegraph and telephone wires, water or gas or other pipes. The bridge company assumed the cost of operating the lift span and assumed any liability for maritime or other torts arising from improper operation thereof or improper channel lights. It agreed that if in the course of replacement of the street railway tracks the flooring of the upper deck was damaged it would replace the same. The city agreed to install and maintain lighting fixtures on the bridge.

It was provided that if the city, county or commission failed to do necessary maintenance work for ninety days after the same became necessary, the bridge company might do the work at the expense of the party responsible for such maintenance under the said contract. The commission should have power to improve, widen or reconstruct the bridge subject to approval of the plans by the company. If the bridge should become destroyed or obsolete the commission might elect to replace it at the existing site, in which event the rights of the bridge company would attach to the new bridge; or to build another bridge at a new location, in which event the old bridge would revert to the bridge company.

After the execution of this contract the commission actually undertook the maintenance of the bridge and has maintained it ever since. Markers have been placed on it designating certain highways which pass over it.

In 1929, some two years after this contract was executed, the legislature adopted what is now Sec. 8777, R. S. Mo. 1939 [Mo. St. Ann., sec. 8129, p. 6927], which reads as follows:

"Whenever a county, city or other civil subdivision shall have, out of public funds, purchased or constructed across any navigable stream any bridge that forms a segment or part of the state road system or any easement thereon, then the State Highway Commission, at any such time or times as the road funds will justify without interfering with other state road construction or maintenance, may construct and build such roads in such county, city or other civil subdivision as the county court of such county or in which such city or other civil subdivision is situate may direct; the cost of which roads shall be equal to the value to the state at the time taken over of the portion

of such bridge entirely within the State of Missouri, not exceeding in any case the amount expended by such county, city or other civil subdivision in the acquisition of such bridge: *Provided, however,* that any county, ▇ city or other civil subdivision may elect to receive such reimbursement from the State Highway Commission in cash."

Purporting to act under the terms of this statute the relators herein have repeatedly requested cash refunds from the commission. While the commission has not definitely refused such request it has over a period of several years failed to act on the same, because, as stated by the commissioners, they were doubtful as to the legality of the original transaction. It is conceded that the sum of $1,500,000 paid to the bridge company by the relators constituted public funds within the meaning of the statute; that the Missouri River at Kansas City is a portion of the navigable waters of the United States; and that said bridge is wholly within the State of Missouri.

The purpose of the present writ of mandamus is to compel the Highway Commission to reimburse the city and county for the money expended in acquisition of the bridge. On the basis of evidence heard the commissioner found that the value of the bridge when taken over was $1,228,000 and he recommended that our writ be made permanent, requiring the reimbursement of the two relators in the following sums: to Kansas City $1,105,200; to Clay County $122,800.

▇ Relators' cause of action, if any, is based upon Sec. 8777, R. S. Mo. 1939 [Mo. St. Ann., sec. 8129, p. 6927], supra. Respondent says that this section is unconstitutional, being in conflict with Sec. 44a, Art. IV, of the State Constitution. It argues, in the first place, that the statute mentioned attempts to create new obligations against the state road fund or to add to the obligations imposed upon the fund by the constitution. The constitutional provision created the fund and specifies the purposes for which it is to be used. Among other such purposes we find the following:

"To reimburse the various counties and political or civil subdivisions . . . for money expended by them in the construction or acquisition of roads and bridges now or hereafter taken over by the State as permanent parts of the state highway system to the extent of the value to the State of such roads and bridges."

Respondent says that this constitutional provision does not authorize reimbursement where an easement over a bridge or other right therein, less than absolute fee simple ownership, is taken. It is contended that the legislature itself, prior to the adoption of the constitutional amendment, had construed the word "bridge" as not including or being synonymous with an easement over a bridge. The argument is that the state road law, as it had existed prior to 1927 [Laws of Mo. 1923, p. 354], had referred to bridges over navigable streams; that in 1927 (Laws of Mo. 1927, p. 419] the Legislature

amended said section by inserting therein provisions concerning "any easement over any privately-owned bridge." This, it is said, is a differentiation of the terms "bridge" and "easement over bridges." We are cited to the principle announced in numerous cases that a construction of law by the Legislature, as indicated by the language of other subsequent enactments, is entitled a consideration in the interpretation of a statute. [Morgan v. Jewell Construction Co., 230 Mo. App. 425, 91 S. W. (2d) 938.] We are convinced, however, that in using the word "bridge" in Sec. 44a of Article IV of the Constitution the framers did not intend to adopt any narrow or technical construction and to limit the term to the acquisition of absolute fee simple title. Considering the purposes for which the section was enacted it is plain that the constitution makers intended to include in the term all such interest in bridges as in the opinion of the commission would serve the purpose of establishing necessary links in the state's system of free public roads.

Respondent also attacks the constitutionality of Sec. 8777, R. S. Mo. 1939 [Mo. St. Ann., sec. 8129, p. 6927], supra, on the ground that where refunds in kind are requested the location of the roads to be built by the State is left to the discretion of the county court. It is said that the location of all state roads is a matter entrusted by the constitution to the discretion of the commission and that the statute divests the commission of this power and vests it in county courts. It is not necessary for us to pass upon the constitutionality of that particular clause in the section, for we are here dealing with a request for a cash refund and the provision as to cash refunds is sufficiently separable from that as to refunds in kind that it may stand even though the latter provision be objectionable. We are therefore expressing no opinion on the point but hold that the provisions here involved do not unconstitutionally delegate the commission's power to any other body.

Respondent next contends that no refund can be claimed by the relators under Sec. 8777, R. S. Mo. 1939 [Mo. St. Ann., sec. 8129, p. 6927], supra, because the bridge was never actually taken over by ▮▮▮▮ the commission. Respondent says and we agree with the contention that the mere placing of highway markers on the bridge and the doing of repair work would not constitute a taking over. We are therefore left with the question of whether or not the 1927 contract itself constituted a taking over of the bridge. The precise question was before this court in the case of Lowery v. Kansas City, 377 Mo. 47, 85 S. W. (2d) 104. That was an action by a private individual against the city for injuries sustained as alleged because of the negligence of the city in failing to light the bridge properly. The defendant city, one of the present relators, contended that no liability attached to it because by the 1927 contract it had turned over the bridge to the commission and the structure thereafter became the property of the State. In a careful and exhaustive opinion by

Commissioner HYDE it was held that this contention of the city was sound. The present respondent was not a party to that case and its decision is therefore not res judicata, but it is of strong and persuasive authority here. Certain new contentions, however, are made by the respondent which necessitate our consideration. The authority of the commission to take over the bridge in 1927 must be derived from what is now Sec. 8787, R. S. Mo. 1939 [Mo. St. Ann., sec. 8139, p. 6931]. The section was originally adopted in 1923 [Laws of 1923, p. 354], but was amended prior to the execution of the present agreement [Laws of 1927, p. 419.] [See Lowery v. Kansas City, 377 Mo. 47, 85 S. W. (2d) 104, supra.] The section, as amended, provided for the taking over by the commission of bridges over navigable streams "or any easement over any privately-owned bridge" which should be tendered to the commission "free and without consideration." The section also provides that such bridge when taken over shall be regarded as a part of the highway system and shall be maintained by the State. Respondent says that the A. S. B. Bridge was not tendered free and without consideration. It is true that the monetary consideration was all paid by the relators but respondent says it undertook numerous obligations which were all a part of the consideration of the contract. The consideration of a contract can consist either in a benefit conferred upon the promisor or in a legal detriment to the promisee, which means that the promisee changes his legal position; that is, that he gives up certain rights, privileges or immunities which he theretofore possessed or assumes certain duties or liabilities not theretofore imposed upon him. [American Law Institute, Restatement of the Law of Contracts, sec. 75.] If, however, we examine the contract before us carefully it will appear that the commission gave up no privileges, powers or immunities and assumed no obligations except those which were imposed upon it in any event by the statute. The mere promise to do that which the statute required it to do in any event could not constitute a consideration.

■ Respondent next argues that it did not obtain the bridge or even an easement therein. Its position may be thus summarized: that when permission was granted to build the bridge by congress the public obtained an easement over it subject simply to the power of the bridge company to charge toll and to make reasonable regulations regarding the use of the bridge; that the present contract, therefore, did not create this easement in the public but simply extinguished the power to charge toll and the power to regulate. This is too great a legal refinement. The word "easement," as used in the statute, must not be given too narrow or technical construction. The right which the public got under this contract was substantially greater than the right it had previously. It was the right to cross the bridge at any time without paying toll, and without being subject to regulation by the bridge company. Such a right clearly falls within

the meaning of the word "easement" as used in the statute. Respondent contends, however, that even if an easement were acquired through the 1927 contract the bridge could not constitute a "permanent part" of the state highway system. It is true that the contract contemplated the bridge might sometime become obsolete and have to be replaced. But the word "permanent" in the constitution must be given a relative and not an absolute connotation, and in an absolute sense no part of the highway system could ever be permanent. Respondent contends, however, that the bridge cannot constitute a permanent part of the state highway system because the approaches to the bridge must necessarily be constructed through the thickly populated portions of Kansas City and North Kansas City. Respondent construes Sec. 8781, R. S. Mo. 1939 [Mo. St. Ann., sec. 8133, p. 6929] as prohibiting the construction of a permanent State highway through the thickly built sections of cities of this size. However, these matters are outside of the record.

As a matter of substantive law therefore it is plain that the relators are entitled to have the refund here requested when, in the opinion of the commission, the amount of money in the state road fund justifies the payment of the refund without undue interference in other construction and maintenance operations of the highway system.

The report of the Special Commissioner, however, fixes the exact amount of the refund and apportions the same between the two relators. The statute, as we have set it out above, establishes a general rule to be followed in determining the amount of the refund. Such refund shall not exceed the amount paid for the bridge or easement thereon but shall be fixed at the value of the bridge to the State at the time it is acquired. The refund is to be allowed by the commission. Hence it is the commission which must decide this necessary question of fact. The amount determined under the statutory rule and the time of payment lie wholly within the jurisdiction of the commission. [State ex rel. Highway Commission v. Thompson, 331 Mo. 321, 53 S. W. (2d) 273.] When jurisdiction to find and determine facts is vested by law in an administrative tribunal the courts may not substitute their judgment for that of the commission. [Howlett v. Social Security Commission, 347 Mo. 784, 149 S. W. (2d) 806, l. c. 809; Hughes v. Board of Health, 345 Mo. 995, 137 S. W. (2d) 523.] It would be improper therefore for us to attempt to direct the commission as to the amount of payment or the time when the same is to be made. [State ex rel. Spearman v. Missouri State Highway Commission, 331 Mo. 306, 53 S. W. (2d) 282; State ex rel. Liberty Township v. Highway Commission, 315 Mo. 747, 287 S. W. 39.] In view of the fact of the heavy expense incident to the proceeding, however, it would be an injustice to deny any relief because the prayer of the petition was too broad and the alternative writ improperly framed.

[State ex rel. Volker v. Kirby, 345 Mo. 801, 136 S. W. (2d) 319; State ex rel. McWilliams v. Bates, 235 Mo. 262, 138 S. W. 482; State ex rel. Reynolds v. Highway Commission, 328 Mo. 859, 42 S. W. (2d) 193.]

The alternative writ therefore must be modified and made permanent, in modified form, commanding the commission to hear and determine the question of the proper amount of refund due to the relators under the statutory rule as set forth, and to set up such refund upon its books subject to payment by the commission when, in its opinion, the condition of the highway funds will so permit without interference to other construction and maintenance work on the highway system. It is so ordered. All concur.

### ON RESPONDENT'S MOTION FOR REHEARING.

HAYS, J.—The respondent's motion for rehearing is based upon the theory that we incorrectly held (page 7 of the Opinion) that the A. S. B. Bridge was tendered to the State without consideration. Respondent says that we overlooked certain provisions of the contract between the Commission and the Bridge Company. It seeks to find a consideration in the fact that the Commission agreed to maintain the bridge perpetually (Abstract, pages 30 to 37). The provision cited states: "Said Commission does hereby covenant and agree to maintain perpetually the said bridge and approaches thereto and every part thereof (except as otherwise herein expressly provided)." It is contended that this obligates the Commission to maintain the lower deck of the bridge which is to be used exclusively by the bridge company. Our construction of this provision is that the Commission agrees to maintain the entire structure and that the maintenance of the railroad deck is only incidental to the maintenance of the bridge itself. In other words you could not maintain the bridge without also maintaining the railroad deck as an integral part of it. The only part of the railroad deck which is separate and distinct from the bridge and which exists for the sole benefit of the bridge company is the track and the bridge company agrees to maintain this without any expense to the highway department.

The other argument is that the highway department, in agreeing that any repairs on the bridge of a major character are to be subject to approval by the bridge company, gave up some of its legal rights, and this would constitute a consideration. The point is that the Highway Department never acquired the whole bridge but acquired certain easements in it, among which was the right to repair, but that that right was subject to certain conditions and exceptions, one of them being that the Highway Department must submit its plans to the Bridge Company's engineers. The distinction between a consideration of a promise and certain conditions and exceptions therein is hard to draw. But it seems to me that the statute in writing

that the bridge must be tendered free and without consideration does not mean that no conditions of any kind are to be attached to the grant. Such a construction of the statute would be far too narrow.

It is also argued that the bridge company had a right to require the Highway Department to build a new bridge under certain circumstances. This is absolutely a misconstruction of the contract. The contract, properly construed, means this: that the Highway Department, if it considers it wise or necessary, can build a new bridge at the existing site, in which event the rights of the bridge company in the old bridge will attach to the new one, which is merely a substitute for the old one. But if the State Highway Commission does not want to do this it can build another bridge at any time it wants to, subject only to the right of the bridge company to have the old bridge back. Again this is not the giving of any new promise by the Commission, but simply a limitation contained in the grant from the bridge company.

### ON RESPONDENT'S MOTION TO MODIFY OPINION.

█ The respondent contends in this motion that we misunderstood their argument in regard to Section 8777, R. S. Mo. 1939. They now say that that section is unconstitutional because it gives a city or a county the right to force a bridge on the Highway Department. A careful reading of this section shows that it provides that the city or county may acquire a bridge which is a part of the State Highway System. Now the Commission has the full power to locate the roads which are a part of the State Highway System (although, of course, the roads must run from a certain designated point to another point). Therefore the Commission and the Commission alone can decide whether a given bridge is or is not a part of its system, and the city or county can do nothing about it until the State, through the Commission, has agreed to make the bridge a part of its system. We cannot see, therefore, how this section can be said to interfere with the constitutional powers of the Commission.

### ON RELATORS' MOTION TO MODIFY OPINION.

In this motion the relators ask that the Opinion be modified to immediately force the Highway Commission to set up a refund on its books for this bridge. In the opinion it is specified that the Commission be ordered to hear and determine the amount due. It is the position taken in the Opinion that the determination of this amount is a matter entrusted by law to the Commission and not to this court, and it seems that this position is absolutely correct and that regardless of the failure in the past of the Commission to act, we must still leave the determination of the amount to it. Its failure to act in the past was obviously due to a misconception of the law. I feel that after we have determined the law they will obey our mandate and

properly set up the refund on their books as soon as they have determined the amount of it.

Relators also complain in this connection of our holding that the Commission does not have to pay this refund immediately. They say that the Constitution makes the payment of it a mandatory duty. This is true; but the Constitution also says that the highway funds are to be used for construction and maintenance of the roads and it is unquestionably the duty of the Commission to say which of these various purposes are to come first. For this court to interfere and. to say that a certain bill must be paid before others would cause the greatest confusion in the work of the Commission. In fact it would be practically impossible for the Commission to function if we were called upon to constantly interfere and tell them what job to do first.

CONCLUSION.

My conclusion is, therefore, that the Opinion ought to stand exactly as written.