The KANSAS CITY POWER & LIGHT COMPANY, et al., Respondents,

v.

MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Appellant.

No. WD 38230.

Missouri Court of Appeals, Western District.

April 7, 1987.

Bruce A. Ring, Chief Counsel, Dennis J. Redel, Asst. Counsel, Missouri Highway and Transp. Com'n, Jefferson City, for appellant.

Pat Shannon, Law Dept., Kansas City Power & Light Co., Kansas City, for respondents.

Before PRITCHARD, P.J., and KENNEDY and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

This appeal is from an administrative hearing held by the appellant, Missouri Highway and Transportation Commission (Commission), under § 227.240, RSMo 1978, now RSMo 1986. The respondent is Kansas City Power & Light (KCPL). The Gas Service Company was originally a party to this suit but is not involved in the appeal because it settled with the Commission following the administrative hearing and review.

KCPL has had since 1920 electric power lines on the ASB bridge. This bridge, which in 1927 became part of the state highway system, connects Kansas City with North Kansas City, and spans the Missouri River. The ASB bridge has two decks. The upper deck is for vehicles and the lower deck is for rail traffic. There are lengthy viaduct approaches allowing vehicular access to the bridge. In 1980, the Commission sought to move the highway traffic from the ASB bridge to a bridge to be built nearby. The question then arose as what to do with the KCPL lines. A hearing as to relocation of the power lines was held under § 227.240, *supra*, which, as applicable here reads:

Location and removal of public utility equipment penalty for violation

1. The *location and removal* of all telephone, telegraph and electric light and *power* transmission *lines*, poles, wires, and conduits and all pipe lines and tramways, *erected* or constructed, *or hereafter* to be *erected* or constructed by any corporation, association or persons, *within the right of way of any state highway, insofar* as the public *travel and traffic is concerned,* and insofar as the same *may interfere* with the construction or *maintenance* of any such highway, *shall be under the control and supervision of the state highway commission.*

2. The *commission* or some officer selected by the commission shall *serve a written notice* upon the person or *corporation owning* or maintaining any such *lines,* poles, wires, conduits, pipe lines, or tramways, which notice shall contain a plan or chart indicating the places on the right of way at which such lines, poles, wires, conduits, pipe lines or tramways may be maintained. The notice shall also state the time when the work of hard surfacing said roads is proposed to commence, and shall further state that a *hearing shall be had upon the proposed plan of location* and matters incidental thereto, giving the place and date of such hearing. Immediately after such hearing the said owner shall be given a notice of the findings and orders of the commis-

sion and shall be given a reasonable time thereafter to comply therewith; provided, however, that the effect of any change ordered by the commission shall not be to remove all or any part of such lines, poles, wires, conduits, pipe lines or tramways from the right of way of the highway. The removal of the same shall be made *at the cost and expense of the owners* thereof *unless otherwise provided by said commission,* and in the event of the failure of such owners to remove the same at the time so determined they may be removed by the state highway commission, or under its direction, and the cost thereof collected from such owners, and such owners shall not be liable in any way to any person for the placing and maintaining of such lines, poles, wires, conduits, pipe lines and tramways at the places prescribed by the commission. . . . * * * (Emphasis added.)

Additional facts are now in order. The ASB bridge was built in 1887 and was privately owned by the development company and a railway. On June 20, 1920 the owners granted easements to KCPL to put power lines on the bridge. The location of the easements and location of the lines installed June 29, 1920 was presumably underneath the roadway portion of the top deck and atop the bottom railroad deck.

In 1921 § 227.240 was enacted.

On July 14, 1927 the bridge and railway company's conveyed the ASB bridge to city and county governments which in turn conveyed the bridge to the Commission for the purpose of establishing, "a free public highway over the upper deck of the bridge . . ." *State ex rel. Kansas City v. State Highway Commission,* 349 Mo. 865, 163 S.W.2d 948, 951 (banc 1942). Nothing in the deed was to affect the utility easements between the bridge company and the utilities which included KCPL.

In 1928 the Bridge and Railway Company and KCPL entered into a contract which also allowed KCPL to construct utility easements, subject to the 1927 agreement with the Commission. KCPL was to pay the railroad $1250 a year. In 1980 the Commission announced plans to move Highway 9 traffic from the ASB bridge to a new site. The Commission decided to remove the upper deck and contracted to give the remaining lower deck to the railroad. In fact, when the work is completed, the Commission will convey title to the Burlington Northern, which will then be responsible for maintenance of the bridge. According to plan the highway approaches and the vehicular deck were to be removed, but the Commission told KCPL it could keep its lines on the bridge. KCPL declined to stay on the ASB because without vehicular approaches and a vehicular deck above the tracks, it could not service or repair the lines.

KCPL then asked if it could move the lines from the ASB to the new bridge. The Commission stated it would provide no manholes on the bridge, and it would allow no disruption of traffic on the new bridge for any repairs to the power lines. KCPL said it could not live with such an arrangement.

The Commission, faced with KCPL's dissatisfaction with the arrangement on the ASB or the new bridge, filed a notice for the hearing from which this appeal follows. The Commission advised KCPL it was necessary to relocate, at KCPL's expense, "their utility facilities within the limits of the existing right-of-way," due to the rehabilitation of the bridge and, "demolishment of viaduct approaches." At the hearing KCPL reiterated it could not service the lines to the ASB without the vehicular approaches or the upper deck on the railroad deck of the bridge. KCPL then presented evidence as to how its lines could be accommodated on the new bridge but the Commission reiterated it would not provide manhole access to the lines, nor allow service trucks to disrupt traffic. Based on exhibits the Commission found KCPL had in 1920 received the right and privilege to construct a utility facility on the bridge. It found a 1928 contract between the bridge owners and KCPL gave KCPL the right to construct facilities on the bridge, but such rights were subject to the Commission's 1927 agreement (when the state took over the road and bridge) with the owners.

KCPL had argued the Commission was without jurisdiction to hold a § 227.240 hearing since KCPL's rights on the bridge predated the Commission's taking over in 1927. The Commission ordered KCPL to relocate the utility facilities located in the public right of way on the ASB bridge, at the cost of KCPL, all due to the reconstruction of the ASB bridge.

The circuit court reversed the Commission's order. The court decided the Commission had no jurisdiction to order relocation since the utility lines were not, as statutorily required, "within the right of way of any state highway." The court reasoned that when the Commission entered into the 1927 agreement its right to use the bridge was taken subject to the existing reservation of the Bridge Company to maintain utility wires. Thus, when the Commission got the bridge, utility facilities such as KCPL's, already constructed and in place, were excluded from the right of way the Commission then obtained. In other words, the KCPL utility lines were excluded from the right of way and the Commission never had jurisdiction to relocate them. The court reasoned that the 1928 contract was subject to the reservations in the 1927 agreement so the KCPL facilities never became part of the right of way, "because they had not been so in the 1927 agreement." The court noted KCPL had paid rentals to the railroad for the easements which, "proves that the easements granted by the railroad to the KCPL ... were excluded from the grant and retained by the railroad." The circuit court next noted the 1980 agreement between the Commission and the railroad which turned the bridge back to the Burlington Northern after the Commission removed the traffic deck. In that contract the Commission was to provide for relocation of utility facilities at no cost to the railroad. The court concluded this provision did not alter the legal determination that the utility facilities were not in the right of way. According to the judgment, this 1980 delegation to the Commission from the railroad was "contractual in nature and must be enforced by a contract action." The court held a § 227.740 hearing could not be used to move lines

which were not in the right of way owned by the Commission.

On appeal the Commission argues the ASB bridge became a part of the highway system upon transfer in 1927, and as part of the system and the Commission's responsibility, the utility facilities on the bridge could be relocated under § 227.240.

Removal under § 227.240.1 and Commission control apply to power transmission lines errected in or later put within the right of way of a state highway insofar as they affect traffic and maintenance. The unusual facts here make analysis under the statute difficult. The lines were in place on a private bridge under contract rights before the state was *given* the bridge. The state now decides to remove the bridge and abandon the right of way. The lines can physically remain on the lower deck of the bridge—so the question boils down to whether the circuit court was correct in deciding the lines are not in the right of way acquired by the Commission. If the lines are not within the right-of-way then the Commission does not have jurisdiction to proceed under § 227.240.

■ An administrative decision is reviewed to determine whether it is supported by competent and substantial evidence on the whole record, arbitrary, capricious, unreasonable or an abuse of discretion. The evidence and reasonable inferences are considered in a light most favorable to the administrative body. *Hermel, Inc. v. State Tax Commission,* 564 S.W.2d 888, 894 (Mo. banc 1978). Review of orders from a § 227.240 hearing is limited to whether the evidence reasonably supports the Commission's findings that the lines are in the right of way and should be removed due to the changed location of the highway. *Public Water Sup. Dist. No. 2 v. State Highway Com'n.,* 472 S.W.2d 347, 350 (Mo.1971).

■ The record here is vague as to just where the lines are located. Unlike *Public Water Supply Dist. No. 2, of Jackson County v. State Highway Commission,* 244 S.W.2d 4, 6 (Mo.1951), it was *not conceded* these *easements* were *in the right-*

*of-way* of a state road. The best that can be said from the evidence is the lines are attached by hangars to the superstructure of the bridge—attached on the sides of the lower or railroad portion. That being the case, the trial court's judgment and reasoning have to be correct. The Commission had the duty as a matter of law to sustain the statutory prerequisites of § 277.240.1 to acquire jurisdiction. Failing to establish jurisdiction makes the order a nullity. The Commission has failed to establish jurisdiction by failing to show the lines were within the right of way.

As stated earlier, the facts and legal theories of the parties are difficult to understand. With this result, KCPL is left with lines on the railroad bridge but with no access for maintenance. The Commission has relieved itself of an old bridge which was expensive to maintain.

It is also hard to fathom how the reconstruction of the highway, according to the Commission's plans, made it necessary to move the KCPL lines to prevent interference with the use of the reconstructed highway. *Jackson County Public Water Supply Dist. # 1*, 365 S.W.2d 553, 558 (Mo. 1963); *State ex rel. State Highway Commission v. Weinstein*, 322 S.W.2d 778, 783 (Mo. banc 1959). Since the road on the deck of the bridge was to be dismantled with only a railway deck remaining, it is hard to see how the KCPL wires had any relevance under the statutory language concerning "public traffic" or "maintenance of any such highway." The Commission's initial plan and letters to KCPL calling for the lines to remain after deck removal dispels any later reason for an effort to require relocation. The fact that the Commission as a matter of courtesy or for any reason held such a hearing only after KCPL was not willing to stay on the ASB doesn't change anything or invoke jurisdiction. *Cf. Jackson County District # 1, supra*, at 559.

The easements to KCPL from the 1920 contract still exist. The Commission never acquired a dominent interest over the placement of these lines. KCPL still paid the $1250 yearly costs to the railroad for the lines. It was not shown to be necessary to relocate the lines after reconstruction. The judgment for KCPL was correct and is affirmed. *State, ex rel. State Highway Commission v. Public Water Supply District No. 2 of Jefferson County*, 559 S.W.2d 538 (Mo.App.1977).

All concur.