STATE OF MISSOURI at the relation of J. L. JONES, TYRE W. BURTON and H. R. TURLEY, Relators, v. DWIGHT H. BROWN, Secretary of State.—92 S. W. (2d) 718.

Court en Banc, March 4, 1936.

*A. L. McCawley, B. H. Charles* and *Carl Trauernicht* for relator.

450

*Roy McKittrick,* Attorney General, and *Covell R. Hewitt,* Assistant Attorney General, for respondent.

FRANK, J.—Mandamus to compel respondent, Secretary of State, to file in his office certain articles of agreement tendered to him by relators, and to issue and deliver to relators a certified copy thereof.

By stipulation of the parties the issuance and service of the alternative writ was waived and relators' petition treated as and for the writ.

Proceeding under the provisions of an Act of the Fifty-eighth General Assembly, Laws of Missouri 1935, pages 337 to 343, and an Act of the Fifty-seventh General Assembly, Laws of Missouri 1933-34, pages 115 to 117, relators desiring particularly to provide for

the construction of a highway bridge at or near Arrow Rock and across the Missouri River between the counties of Saline and Howard, entered into articles of agreement and presented the same for filing in the office of respondent, to the end that they might become a body corporate as "State Highway Toll Bridge Trustees," vested with the powers as in aforesaid act prescribed.

Upon presentation of said articles of agreement to respondent, relators tendered to him the fees provided by law, and requested him to file said articles in his office and to issue a certified copy thereof, as provided in aforesaid acts, all of which respondent refused and still refuses to do.

Thereupon relators filed in this court their petition for an alternative writ of mandamus directed to respondent commanding him to file said articles of agreement in his office and to issue a certified copy thereof. Respondent filed return to said petition, alleging therein as grounds for refusal to file said articles of agreement, that the 1935 Act under which said articles were offered for filing is unconstitutional. Relators then filed motion for judgment on the pleadings.

The provisions of Section 1 of the act will be set out in connection with a discussion of the validity of that section.

Sections 2, 3 and 4 of the act read respectively as follows:

"Every Board of Trustees so formed shall be deemed a public agency within the meaning of the act referred to in Section 1 hereof, and, for the purposes enumerated in said act, shall have and exercise all the powers by said act vested in the public agencies therein named, and such additional powers as are herein enumerated, all of which said additional powers are hereby vested in and may be exercised by any public agency in said act named.

"Any Board of Trustees organized under authority of this act, may independently, or with any other such Board or Boards, or with any public agency, or agencies, named in said act of the 57th General Assembly, acquire any toll bridge, or toll bridges, approaches, and roadways, in trust for the use and benefit of the State of Missouri, or for the use and benefit of any political or civil sub-division, or sub-divisions of the State of Missouri, subject to any lien securing the payment of any outstanding mortgage or other indebtedness against the toll bridge or toll bridges, approaches, or roadways, so acquired, or against the revenues thereof, and may issue toll bridge revenue bonds against the net operating toll revenues of the toll bridge or toll bridges, approaches, or roadways so acquired for the difference between the agreed purchase price of such toll bridge, or toll bridges, roadways, and approaches, and the total aggregate amount of such mortgage or other indebtedness at the time outstanding. All toll bridge revenue bonds so issued shall be subject to the rights of the holders of the bonds evidencing said outstanding mort-

gage or other indebtedness, and to the lien of the mortgage, or mortgages, securing the payment of said bonds, and shall also be subject to the rights of the purchasers of any toll bridge revenue bonds issued by said board, or other public agency named in said Act, of the 57th General Assembly, for the purpose of refunding any such outstanding mortgage or other indebtedness. Any such board, or other public agency, acquiring any toll bridge, or toll bridges, approaches, or roadways, subject to any outstanding mortgage indebtedness, shall have power to, and may, issue toll bridge revenue bonds against the net operating revenues of any toll bridge, or toll bridges, approaches and roadways, so acquired, for the purpose of refunding all, or a part of such outstanding mortgage indebtedness, and all toll bridge revenue bonds so issued shall have the same priority over any toll bridge bonds issued for the acquisition of any such property in the first instance, as was had by the bonds so refunded.

"Every such Board, and every public agency mentioned in said act of the 57th General Assembly, may execute liens pledging the revenue derived from the tolls collected for use of any such toll bridge, or toll bridges, or parts thereof, which are constructed, or acquired, with funds borrowed, under authority of this act, and of said act of the 57th General Assembly, for the retirement of such bonds, and may pledge by mortgage, any such toll bridge, or toll bridges, or parts thereof, to further secure the payment of such bonds. *Provided, however,* that no toll bridge revenue bonds, or any lien securing such bonds, shall be repaid in whole or in part from any funds arising from taxation, nor shall any such bonds or liens given under authority of this act constitute a lien on any other property of any such board, or other public agency, or a pledge of the credit of any such board or other public agency, and, *Provided:* that at such time when all moneys borrowed as aforesaid shall have been repaid, together with interest and other charges thereon, no further tolls shall be charged for the use by the traveling public of such toll bridge, or toll bridges. Such bonds shall be negotiable instruments within the meaning of the negotiable instruments law and the law merchant, may bear interest not to exceed six per cent per annum, and may mature annually or semi-annually, and may be sold at such time, and in such manner, as the issuing authority may determine upon, and, *Provided:* if, after any such board, boards, or other public agency or agencies shall have issued any toll bridge revenue bonds for the payment of the cost of the acquisition or construction of any toll bridge or toll bridges, approaches and roadways, under authority of this act or of said Act of the 57th General Assembly, such board, boards or other public agency or agencies shall construct or acquire any other toll bridge or toll bridges, approaches and roadways, within sixty (60) miles of the toll bridge or toll bridges against which said first-mentioned toll bridge revenue bonds were

issued and shall issue toll bridge revenue bonds against such after-acquired or after-constructed toll bridge or toll bridges, approaches, and roadways, such board or boards, or other public agency or agencies, may continue to collect tolls on said toll bridge or toll bridges, after all said first-mentioned toll bridge revenue bonds and toll bridge revenue bonds issued for refunding purposes, are paid, and use the net proceeds of such tolls to supplement the revenue of such after-acquired or constructed toll bridge or toll bridges until but not after all of the revenue bonds issued against such after-acquired toll bridge, or toll bridges, have been paid.''

The pertinent parts of Section 5 read as follows:

''All toll bridge revenue bonds, issued under authority of this act or under authority of said act of the 57th General Assembly by any public agency in said act named or by any Board of Trustees formed under authority of this act, shall for the purposes of taxation have the status of bonds of the State of Missouri or bonds of the public agency by which any such toll bridge or bridges is owned, or for which any such toll bridge or toll bridges may be held in trust, the same as if such toll bridge revenue bonds were payable out of funds arising from taxation, and may be issued and sold exempt from the provisions of the Missouri Securities Law.''

██    Respondent first contends that the act is unconstitutional in that it delegates to private citizens the power to creat public agencies of the State.

This contention is well taken. Section 1 of the act provides that not less than three nor more than seven qualified electors, may by agreement in writing signed, acknowledged, and filed in the office of the Secretary of State, become a body corporate as State Highway Toll Bridge Trustees, with the right of perpetual succession, and *shall be deemed a public agency.* Under the language of the act there never could be a *corporate public agency* known as State Highway Toll Bridge Trustees unless the required number of qualified electors voluntarily filed with the Secretary of State the written agreement provided for in said act. The fact that it takes the voluntary act of private citizens to bring the public agency into existence clearly shows that the statute, standing alone, does not create such agency. Since the power to create a public agency, like the power to create a public office, is a legislative function, a statute which calls to its aid the voluntary act of individuals in order to bring into existence a public agency, is an unwarranted attempt to delegate legislative functions to private individuals.

Examples of legislative acts which create public agencies without aid from other sources are the statutes which create the public Service Commission, the Workmen's Compensation Commission, and the State Highway Commission. [Secs. 3354, 5123, and 8094, R. S.

1929.] Note the language of Section 5123 which creates the Public Service Commission. It reads as follows:

" "A public service commission is hereby created and established, which said public service commission shall be vested with and possessed of the powers and duties in this chapter specified, and also all powers necessary or proper to enable it to carry out fully and effectually all the purposes of this chapter."

The Public Service Commission is brought into existence by the language of the statute, and is a public agency endowed with public functions, 50 Corpus Juris, page 849, section 5. If the statute under review in the present action were a valid statute, then a Public Service Commission could be created by a similar statute, providing that any five freeholders who are qualified electors might by agreement in writing signed, acknowledged, and filed in the office of the Secretary of State, become a body corporate as Public Service Commission, with right of perpetual succession, and be deemed a public agency. Under such a law there would be no limit to the number of Public Service Commissions the State might have. Any five freeholders who were qualified electors could bring into existence a new Public Service Commission by agreement signed and filed as provided in said act. Any other public agency could be created in the same manner. On the other hand in the absence of the written agreement provided for, the State would not and could not have the public agency attempted to be created by the act.

Relator contends and cites in support of the contention authorities holding that "In the absence of constitutional limitations, the State Legislature may create any kind of a corporation to aid in the administration of public affairs and endow such corporation and its officers with such powers and functions as it may deem necessary."

We are in perfect accord with the law as stated by relators. While the Legislature may create any kind of a corporation to aid in the administration of public affairs, it must do so in a constitutional manner, and without delegating legislative powers. It cannot be disputed that the power to create a public agency of the State is legislative in character. Neither can it be disputed that such legislative power cannot be delegated. Any statute which attempts to create a public agency of the State but leaves it to not less than three nor more than seven private citizens to determine by written agreement, whether or not the public agency attempted to be created shall come into existence, is an unlawful attempt to delegate legislative power to private individuals.

Conceding for the sake of argument only, that a public agency, known as "State Highway Toll Bridge Trustees," was constitutionally and lawfully created by Section 1 of the act, still the

act would be invalid, because it delegates legislative functions to such public agency.

The building or acquiring of toll bridges by the State, if authorized, is a legislative function. The Legislature, and it alone, has authority to say whether or not the State shall acquire or build toll bridges. The act does not provide for the acquisition or construction of any toll bridges. Neither does it direct this alleged public agency to either acquire or construct any bridges for the use and benefit of the State. The act provides that it *may* do so. The number of bridges to be acquired or constructed, as well as their character and location, or whether any bridges at all shall be acquired or constructed, is left to the unbridled discretion of this alleged public agency. We recognize that the Legislature could, by a valid statute, provide for the location and construction of bridges, and delegate to a public agency authority to carry out what the statute directed should be done, but the statute in question does not do that. It attempts to delegate legislative functions to this alleged public agency, and for that reason, it is unconstitutional.

Respondent next contends that the act violates the Constitution in that it attempts to exempt from taxation private property, in violation of Section 6 of Article X of the State Constitution.

The constitutional provision invoked provides that:

"The property, real and personal, of the State, counties and other municipal corporations, and cemeteries, shall be exempt from taxation."

The next section of the Constitution, Section 7 of Article X provides that:

"All laws exempting property from taxation, other than the property above enumerated, shall be void."

The act in question provides that the alleged public agency may acquire any toll bridge, or toll bridges, approaches, and roadways, in trust for the use and benefit of the State of Missouri, or for the use and benefit of any political or civil subdivision or subdivisions of the State of Missouri, which shall, for the purpose of taxation, be deemed to be the property of the State of Missouri, or the property of the political or civil subdivision or subdivisions for which such toll bridge, or toll bridges, may be held in trust.

Relator contends that since the toll bridges are to be held by the public agency, in trust for the use and benefit of the State, the State is the beneficial owner of the bridges and for that reason they are exempt from taxation.

The following cases are cited in support of this contention. [Norton's Executors v. City of Louisville (Ky.), 82 S. W. 621; Ellsworth College v. Emmet County (Iowa), 135 N. W. 594, 42 L. R. A. (N. S.) 530; Watson v. City of Boston (Mass.), 95 N. E. 302; Town of Cascade v. Cascade County (Mont.), 243 Pac. 806.] The cited

cases hold that where the beneficial interest of a trust is in an institution whose property is exempt from taxation, such beneficial interest is itself exempt, although legal title thereto be held by trustees and not by the institution itself. Whether or not the cited cases correctly declare the law, we need not determine, because, if they do, they have no application to this case for the reason that under the statutory scheme by which the board of trustees acquires the bridges, the State is prohibited from expending any money in their acquisition or maintenance, and for that reason it has no beneficial interest in them. The act provides that the cost price of the bridges shall be paid by the board of trustees issuing bonds, secured by a mortgage on the bridges, and on the income and revenue derived from their operation. It is true that, if and when, the net income derived from the operation of the bridges discharges the bonds with interest, the State might acquire a beneficial interest in them, but until that time comes, if ever, it has no interest. We so held on a similar state of facts in the recent case of State ex rel. City of Excelsior Springs v. Smith, State Auditor, 336 Mo. 1104, 82 S. W. (2d) 37, 40. In that case the city, in order to secure funds with which to purchase land and improve and equip it for use as a health resort and park, pursuant to statutory authority, issued bonds secured by a mortgage on the property and on the income to be derived therefrom, payable solely out of such income. Concerning the beneficial interest of the city, if any, in the property thus acquired, we said:

"Under the act of the Legislature, the city has not and will not contribute property or expend money in aid of the improvement. The sale of the bonds, purchase of the lands, and execution of the mortgage lodged in the city no beneficial interest in the property covered by the mortgage. The city holds the legal title to the properties, conditioned on acquiring, if ever, the beneficial interest by payment of the bonds from income derived from the properties."

Under the holding in the Excelsior Springs case, the State would not acquire a beneficial interest in toll bridges acquired by the "Toll Bridge Trustees" until the indebtedness against them was paid from the net income derived from their operation. Since the State would have no beneficial interest in the bridges until the indebtedness against them was paid, they would not be State property until that time. Property which, in fact, does not belong to the State, cannot be made State property by legislative declaration. Neither can the Legislature exempt property from taxation by declaring that such property, for the purpose of taxation, shall be deemed State property, when in fact, it is not State property. An analogous question was decided by this court in the early case of The State ex rel. Richey v. McGrath, 95 Mo. 193, 8 S. W. 425. In that case relators

presented to the Secretary of State articles of agreement for incorporation as a building and loan association, and requested the Secretary of State to issue a certificate of incorporation without the payment of the fee or tax exacted by the Constitution.

The Secretary of State refused to issue the certificate until such tax was paid, and mandamus was brought to compel him to do so. The constitutional provision involved in that case, Section 21 of Article X, reads as follows:

"No corporation, company or association, other than those formed for benevolent, religious, scientific, or educational purposes, shall be created or organized under the laws of this State, unless the persons named as corporators shall, at or before the filing of the articles of association or incorporation, pay into the State treasury fifty dollars for the first fifty thousand dollars or less of capital stock, and a further sum of five dollars for every additional ten thousand dollars of its capital stock."

The statute in force at that time provided that building and loan associations were benevolent corporations, and as such, were exempt from the payment of the incorporation tax exacted by Section 21 or Article X of the Constitution.

Relators in that case contended that the statute exempted them from payment of the tax. In denying that contention we held that whether or not building and loan associations were benevolent corporations was a question of fact and, if in fact, they were not benevolent corporations, the Legislature could not make them such by so declaring in a statute. On that subject, we there said:

". . . It may be said that if, in point of fact, the incorporation authorized by the act is not a corporation for benevolent purposes, the declaration of the Legislature that it is a benevolent corporation does not make it so, any more than a legislative declaration that a horse is a cow would alter the fact and convert the horse into a cow. Such legislative legerdemain is to be condemned, not approved."

We held in that case, in face of a statutory declaration to the contrary, that building and loan associations were not benevolent corporations, and refused to compel the Secretary of State to issue a certificate of incorporation without payment of the requisite incorporation fees exacted by the Constitution. This holding was approved in the recent case of Rockhill Tennis Club v. Volker, 331 Mo. 947, 958-9, 56 S. W. (2d) 9.

For reasons heretofore stated, the bridges acquired by the board of trustees, pursuant to the provisions of the act, would not be property of the State. Neither would bonds issued by them be bonds of the State. The declaration in the act, that for the purpose of taxation such bridges should be deemed to be property of the State,

and that such bonds should have the status of bonds of the State, when in fact such is not the case, is an unconstitutional attempt to exempt the bridges from a property tax, and the interest on the bonds from a state income tax. Black is not white, and it cannot be made so by legislative declaration.

Our judgment is the entire act is unconstitutional and for that reason a peremptory writ of mandamus should be denied and the proceedings dismissed. It is so ordered. All concur.