STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Missouri,
Plaintiff-Respondent,

v.

COUNTY OF CAMDEN and Arthur
E. Harper, Defendants,

Edith Nelson, Intervener-Appellant.

No. 8332.

Springfield Court of Appeals.

Missouri.

Aug. 23, 1965.

the Hurricane Deck Toll Bridge Account (sometimes referred to in the record as the Toll Bridge Revenue Bond and Interest Sinking Fund Account and hereinafter simply called the account) in which all tolls derived from operation of the Hurricane Deck Toll Bridge (hereinafter referred to as the bridge or as the toll bridge) had been deposited prior to discontinuance of tolls on or about April 1, 1953. On January 25, 1964, Edith Nelson (hereinafter called the intervener), who had been county treasurer of Camden County throughout the period from January 1, 1943, to April 1, 1953 (and for several years thereafter), by leave of court filed her amended intervening petition in which she claimed the balance of $1,700.-48 in the account which (as she pleaded) "now remains in the hands of [defendant Arthur E. Harper] the present county treasurer of Camden County" and prayed that the court order payment thereof to her individually. Upon plaintiff Commission's motions thereafter filed, the court entered summary judgment dismissing the amended intervening petition of Edith Nelson and directing defendants, County of Camden and Arthur E. Harper, to pay to the Commission the balance of $1,700.48 in the account. After an unavailing motion to amend the judgment or for a new trial, intervener perfected this appeal.

Prior to the filing of briefs, counsel joined in a written "stipulation" to transfer the case to the Supreme Court of Missouri on the ground that this is a civil case to which a county is a party. Art. V, Sec. 3, Mo.Const. of 1945, 2 V.A.M.S. However, appellate jurisdiction may not be conferred even by express consent [Mack v. Mack, Mo., 281 S.W.2d 872, 873 (1); Morrow v. Caloric Appliance Corp., Mo.App., 362 S.W.2d 282, 283(1); Collier v. Smith, Mo.App., 292 S.W.2d 627, 630–631(4)]; and, with our preliminary consideration leaving us in doubt concerning appellate jurisdiction, we treated the stipulation of counsel as a motion to transfer to be taken with the case. In the jurisdictional statement in intervener's brief [V.A.

Claude T. Wood, Richland, for intervener-appellant.

Robert L. Hyder, Joe Bill Carter, Jefferson City, for plaintiff-respondent.

STONE, Judge.

The State Highway Commission of Missouri (hereinafter called the Commission), as plaintiff, instituted this action on March 23, 1961, against the County of Camden (hereinafter called the County) and Arthur E. Harper, the county treasurer, as defendants, to recover $1,700.48, the balance in

M.R. Rule 83.05(b)], counsel adhered to the view that this case is within the exclusive appellate jurisdiction of the Supreme Court; but, after frankly acknowledging that they had been "on both sides of the [jurisdictional] question," counsel for the Commission expressed the belief in their brief that the appeal properly had been lodged in this court. With appropriate respect for, but without regard to, the (presently-conflicting) opinions of capable counsel, we make independent inquiry as to our jurisdiction.

■ In their joint answer, defendants County of Camden and Arthur E. Harper, the county treasurer, stated "that the defendants disclaim any ownership of the funds in question and have not withheld said funds from the plaintiff [Commission] because of any claim of ownership, but have not paid said funds over to the plaintiff because these defendants have not been able to ascertain the lawful owner thereof by reason of the fact that both plaintiff and the said Edith Nelson [intervener] claim to be entitled to said funds." After dismissal of intervener's amended petition and entry of judgment, defendants filed no after-trial motion and did not appeal. Thus, although sued as a party defendant, the County by its answer assumed a position akin to that of an interpleader. Cf. Johnson County v. Bryson, 27 Mo.App. 341, 350(3). And, upon entry of judgment denying intervener's claim and awarding the balance in the account to the Commission, the County by its subsequent course of inaction removed itself from the case and is no longer "a party to the record" [State ex rel. Heath v. County Court for New Madrid County, Mo., 324 S.W.2d 662, 663(3)] for appellate jurisdictional purposes. Witt v. City of Webster Groves, Mo., 383 S.W.2d 723, 725(1). In this connection, see Barrett v. Stoddard County, Mo.App., 183 S.W. 644, 648(13); Barrett v. Stoddard County, 272 Mo. 129, 134–135, 197 S.W. 914, 915. The motion to transfer is denied and we proceed to the merits of the appeal.

On July 16, 1934, the County entered into "a loan and grant agreement" with the United States of America, pursuant to which the County, so authorized by legislative enactment [Laws of 1933–34, 1st Ex.Sess., p. 115; now Secs. 234.210 and 234.220], issued and sold to the United States (which, in turn, sold to the Reconstruction Finance Corporation, a governmental agency) four per cent serial funding bonds known as County of Camden Toll Bridge Revenue Bonds (hereinafter called the bonds) in the aggregate principal amount of $512,000, and the United States made a grant of $143,513.23 to the County. (Except as otherwise specifically stated, all statutory references are to RSMo 1959, V.A.M.S.) The proceeds of this loan and grant were used by the County for construction of the Hurricane Deck Toll Bridge across the Lake of the Ozarks on Missouri State Highway No. 5 in Camden County. Pursuant to statutory authorization [Laws of 1933–34, 1st Ex.Sess., p. 116; now Sec. 234.220(3)], the County pledged the revenue derived from the bridge to retire the bonds by giving a lien on such revenue to the bondholders. Upon completion of the bridge, the County operated and maintained it, deposited all revenues derived therefrom in the account, and paid by county warrants drawn on that account all expenses incident to operation and maintenance of the bridge.

On March 31, 1947, the judges of the county court purported to enter into a contract with intervener Edith Nelson to pay her $2,500 "as compensation for services theretofore rendered by [her] as custodian of the revenue derived from the operation of said toll bridge at the rate of $50 per month from January 1, 1943, to March 1, 1947," during all of which period she had been county treasurer. Thereafter, to wit, on June 25, 1947, Reconstruction Finance Corporation, the owner and holder of the bonds (which had been in default continuously since January 1, 1935, the first interest payment date), as plaintiff, instituted a civil action, docketed

and hereinafter referred to as Case No. 332, in the United States District Court for the Western District of Missouri, against the judges of the county court and Edith Nelson, county treasurer, as defendants, in which case plaintiff RFC sought a decree directing defendants to restore to the account the aforesaid sum of $2,500 and enjoining the judges of the county court from paying, or authorizing the payment of, any sum to defendant Nelson, the county treasurer, for services rendered in connection with keeping or disbursing revenues derived from operation of the bridge.

Upon trial of Case No. 332, the court found and declared that, in the construction and operation of the bridge, the County exercised a governmental function; that the tolls collected in operation of the bridge were "public funds," which defendant Nelson was required "by virtue of her office to receive, keep and disburse" [see Sec. 54.100]; that, as county treasurer of Camden County, then a county of the fourth class [Laws of 1945, p. 1801; now Sec. 48.020], defendant Nelson was paid a stated salary fixed by statute, which also provided that "salaries set out and prescribed in this section shall be in lieu of any other or additional salaries, fees, commissions or emoluments of whatsoever kind for county treasurers . . ." [Laws of 1945, p. 1541; now Sec. 54.270]; that Art. VI, Sec. 11, Mo.Const. of 1945, required that ". . . the compensation of all county officers shall be prescribed by law uniform in operation in each class of counties"; and that defendant Nelson was "not entitled to receive any salary, fee or compensation" for services rendered in keeping or disbursing revenues derived from operation of the bridge. The court entered a decree as prayed by plaintiff RFC, which became final without an appeal. This and the last two preceding paragraphs are digested from a certified copy of the file in Case No. 332, made a part of the record without objection at the hearing on plaintiff's motion to dismiss intervener's amended petition.

Plaintiff's petition in the instant case alleged, and defendants' answer admitted, that on or about February 5, 1953, the judges of the county court and "various other public officials and citizens" of the County appeared before the Commission and requested it "to take steps to acquire all the outstanding indebtedness against [the] bridge . . . at a cost to the Commission in the amount of $476,169" and that the county court then agreed that, if the Commission acquired the "outstanding bonds," the County would convey the bridge to the Commission and also would pay to the Commission "all the funds in the Hurricane Deck Toll Bridge account after payment of all lawful obligations against said bridge account." Plaintiff's petition further alleged, and defendants' answer also admitted, that the Commission did acquire all outstanding bonds at a cost of $476,169, and that thereafter a representative of the Commission met with the county court on or about March 18, 1953, at which time the county court entered an order conveying the bridge to the Commission and directing the county treasurer (intervener) to pay to the Commission (a) the sum of $38,754.62 at that time and (b) any balance in the account, "after payment of salaries, costs and lawful charges . . . as soon as possible after April 1, 1953."

In her amended intervening petition, intervener asserted that, on March 18, 1953, the chief counsel of the Commission met with intervener and the county court while the court was in "legal and open session"; that it then was agreed by and between the Commission acting by its chief counsel, the County acting by the county court, and intervener, "that in consideration of this intervener and the County . . . paying over the sum of $38,754.62 from the . . . account to the . . . Commission, and in further consideration of this intervener consenting that said sum should be then and there paid over to the . . . Commission, that the county court . . . was thereby authorized by the . . . Commission . . . to continue to operate

said toll bridge for a period of some ten days [thereafter] . . . *and that the* revenue derived from the operation of said toll bridge during this period of some ten days was to be used by the county court . . . for paying the bills and claims against said toll bridge fund, arising from the operation of said toll bridge, as such bills and claims might be determined by the county court"; and that "it was expressly provided in the aforesaid agreement" that intervener's claim for services "in connection with the operation of said toll bridge . . . was to be included as a bill and claim against said toll bridge fund in such amount as might be determined by the county court."

Intervener then averred that, "pursuant to the agreement aforesaid," the county court thereafter continued to operate the toll bridge until on or about April 1, 1953; that, when the "toll bridge operation was discontinued . . . the expenses of said operation were paid, except for the services of this intervener, the then county treasurer, who submitted to the county court a statement for services in connection with her work in collecting, auditing, accounting and disbursing the tolls, in the amount of $2,500, which said sum was duly approved, determined and allowed by the county court . . . to be paid out of the funds then remaining in the custody of the treasurer of Camden County . . . pursuant [to] and in accordance with the aforesaid agreement"; that, however, no portion of intervener's "bill" of $2,500 was paid; and that, by reason of the foregoing, intervener was entitled to receive the balance of $1,700.48 in the account. .

In intervener's after-judgment motion to amend the judgment or for a new trial, the theory of her amended intervening petition was said to be that it "affirmatively shows that on or about the 18th day of March, 1953, the plaintiff [Commission], the defendants [County and intervener as county treasurer], and the intervener [individually] effected a full and complete compromise and settlement of a disputed claim and the amended intervening petition seeks to enforce said compromise and settlement, and the court therefore erred in dismissing the amended intervening petition." Nothing of that purport is found in intervener's appellate brief. Rather, her theory here is, in essence, that "an entirely new agreement" by and between the Commission, the County and herself (hereinafter referred to as *the new agreement)* was made on March 18, 1953, when the bridge was conveyed to the Commission; that, under the new agreement, intervener rendered "extra services . . . for the Highway Department [the Commission] from March 18, 1953, to April 1, 1953, [which] were in no way germane to the duties of her office" as county treasurer; that, by the new agreement, "Camden County was to operate the bridge from March 18, 1953, until April 1, 1953, and out of the revenue derived from the operation during that period of time, the county court . . . was given unrestricted discretion and authority to pay compensation to intervener-appellant for her extra services"; and that, since her bill in the sum of $2,500 for such "extra services" had been "approved, determined and allowed by the county court," she was entitled to the balance of $1,700.48 in the account which (so she emphasizes) "was not county money" but was money that had "accrued while the bridge belonged to respondent [the Commission]."

■ On their face, the foregoing statements of theory suggest that intervener may have switched ponies in the middle of the judicial stream; and, since no principles are entrenched more firmly than that a party is bound on appeal by the position he took in the circuit court [Douglas v. Farrow, Mo., 334 S.W.2d 234, 240(6); Hildreth v. Key, Mo.App., 341 S.W.2d 601, 613(24)] and that an appellate court should review a case on the theory upon which it was presented nisi [Olsten v. Susman, Mo., 362 S.W.2d 612, 614(3); Hood v. M.F.A. Mutual Ins. Co., Mo.App., 379 S.W.

2d 806, 814(14)], intervener reasonably might be held here to the theory stated in her motion to amend the judgment or for a new trial, i. e., that her amended intervening petition seeks to enforce a "compromise and settlement of a disputed claim." However, since the record as a whole does not permit us to say with assurance that intervener did not, in the circuit court, also urge the theory here advanced, we resolve the doubt in favor of determination of the appeal on that theory.

Under her present theory, intervener's alleged right to the balance of $1,700.48 in the account is predicated on *the new agreement* alleged to have been made on March 18, 1953, when the bridge was conveyed to the Commission. The salient provisions of the new agreement were that the County would operate the bridge, then owned by the Commission, as a toll bridge during the period from March 18 to April 1, 1953, and that the county court "was given unrestricted discretion and authority" by the Commission to pay, out of the revenue derived from operation of the toll bridge for that fourteen-day period, compensation to intervener for her "extra services" during that same period. And the argument of intervener's counsel runs along the line that, under the new agreement, the judges of the county court "acted only as agents for the State Highway Commission"; that "it is quite clear that the funds involved in this litigation [the balance of $1,700.48 in the account] are and were the funds and property of the State Highway Commission"; that, "since these were not county funds [and] were not part of the business of Camden County," intervener, then county treasurer, "had no obligation nor official duty" with respect thereto and "the extra services rendered by intervener in keeping the books, collecting the revenues, and making the audit for the Highway Department from March 18, 1953, to April 1, 1953, were in no way germane to the duties of her office"; and that "her extra services for that period" were compensable in "the sole and unrestricted discretion" of the county court.

▪ Intervener vigorously insists that payment of compensation to her under the new agreement is not barred by the decree of the United States District Court in Case No. 332; and, for the purposes of this opinion, we assume (without, however, so deciding) that intervener's alleged right of recovery is not precluded by application of the doctrine of res judicata, thus putting aside the joint invitation of opposing counsel to join them in an unnecessary and unrewarding safari into that legal jungle. For, passing the Commission's (here immaterial) denial, dehors the record, of the new agreement, we are unable to escape the conclusion that, as counsel for the Commission contend, any such agreement would have been without and beyond the power and authority of the Commission and thus would have been ultra vires and void in the sense that it would have been ineffectual to create legal rights and obligations [Donovan v. Kansas City, 352 Mo. 430, 441, 175 S.W.2d 874, 879, modified 179 S.W.2d 108, appeal dismissed 322 U.S. 707, 64 S.Ct. 1049, 88 L.Ed. 1551], and that intervener could not enforce any alleged right to compensation springing from, and depending upon, the alleged new agreement.

▪ Created by legislative enactment and clothed with powers therein defined, the State Highway Commission is a public entity which is a subordinate branch of the executive department of the state. Bush v. State Highway Com'n. of Missouri, 329 Mo. 843, 853, 46 S.W.2d 854, 858(2); Manley v. State Highway Com'n., Mo.App., 82 S.W.2d 619, 620. The Commission is vested with such powers as are specifically conferred by Art. IV, Secs. 29 and 30, Mo. Const. of 1945, and by Chapters 226 and 227, RSMo 1959, of which we take judicial notice [State ex rel. State Highway Com'n. of Missouri v. Allison, Mo. (banc), 296 S.W.2d 104, 106(1)], and those powers necessary or proper to enable the Com-

mission to carry out fully and effectively the purposes of those constitutional and statutory provisions. Sec. 226.020; State ex rel. St. Louis County v. State Highway Com'n., 315 Mo. 707, 711, 286 S.W. 1, 2(2).[1]

■ Our Supreme Court, en banc, has said that: "The building or acquiring of toll bridges by the state, if authorized, is a legislative function. The Legislature, and it alone, has authority to say whether or not the state shall acquire or build toll bridges." State ex rel. Jones v. Brown, 338 Mo. 448, 456, 92 S.W.2d 718, 721(3). And we would add that the same must be true with respect to the *operation* of toll bridges. Counsel have not cited, and our independent search has failed to reveal, any constitutional or statutory provision which conferred upon the Commission the authority to operate the bridge under consideration as a toll bridge or from which such authority might have been fairly and reasonably implied.[2] Believing and holding (as we do) that the Commission had no authority to operate the bridge as a toll bridge, obviously it could not, by contract, have authorized the county court to do that which the Commission itself could not have done.

■ And, *even if* the Commission properly could have authorized operation of the bridge as a toll bridge, it could not have entered into a valid contract that the revenue derived from such operation, which (so intervener states) "was not county money" but "were the funds and property of the . . . Commission," could be deposited in, and disbursed from, the Hurricane Deck Toll Bridge Account by intervener, either as county treasurer or in her individual capacity. For, the funds in which state highway monies may be deposited are created and set up by Sections 226.200, 226.210 and 226.220, and the state treasurer is the lawful custodian of those funds. Art. IV, Sec. 15, Mo.Const. of 1945; Sec. 30.170. Where a statute " 'limits the doing of a particular thing in a prescribed manner, it necessarily includes in the power granted the negative that it cannot be otherwise done.' Keane v. Strodtman, 323 Mo. 161, 18 S.W.2d 896, 898." Lancaster v. County of Atchison, 352 Mo. 1039, 1046, 180 S.W.2d 706, 709(6).

Nor could the Commission have granted to the county court "unrestricted discretion and authority to pay compensation to intervener-appellant for her extra serv-

---

1. But authority to charge an electric utility for use of a bridge to which the utility attaches its transmission lines may not be implied from statutory authority [§ 227.240] to control and supervise location and removal of such lines [State ex rel. State Highway Com'n. v. Union Elec. Co. of Missouri, Mo.App., 142 S.W. 2d 1099; State ex rel. State Highway Com'n. v. Kansas City Power & Light Co., 232 Mo.App. 308, 105 S.W.2d 1085]; and the power to "construct" so-called "refund roads" does not include the power to select or designate their routes. State ex rel. St. Louis County v. State Highway Com'n., 315 Mo. 707, 286 S.W. 1.

2. In this connection, we note that our Supreme Court, again speaking en banc, has pointed out that the "twofold purpose" of the statutes under which the county issued bonds to finance construction of the bridge [Laws of 1933–34, 1st Ex. Sess., p. 115; now Secs. 234.210 and 234.220] was "[f]irst, to provide for public acquisition or construction of bridges

. . . and, second, to make such bridges toll-free as soon as possible." State ex rel. St. Charles County v. Smith, 348 Mo. 7, 15, 152 S.W.2d 1, 6(1), 135 A.L.R. 625. It appears that purchase by the Commission of the three toll bridges under discussion in State ex rel. State Highway Com'n. v. Thompson, 331 Mo. 321, 53 S.W.2d 273, made those bridges toll-free, for the three dissenting justices thought that the Commission lacked authority to purchase the bridges although they recognized that it "would doubtless be a great convenience and saving to the traveling public using the three bridges . . . if they could immediately become toll-free properties of the state . . . ." 331 Mo. at 336, 53 S.W.2d at 280. See also State ex rel. Kansas City v. State Highway Com'n., 349 Mo. 865, 163 S.W.2d 948, where the conveyance of a toll bridge to the Commission gave to the public "the right to cross the bridge at any time without paying toll . . . ." 349 Mo. at 876, 163 S.W. 2d at 953.

ices" in handling and disbursing tolls collected in operation of the bridge. For, Art. III, Sec. 39, Mo.Const. of 1945 [formerly Art. IV, Sec. 48, Mo.Const. of 1875], provides that "[t]he general assembly shall not have power . . . (4) To pay or to authorize the payment of any claim against the state or any county or municipal corporation of the state under any agreement or contract made without express authority of law . . ."; and, as interpreted and applied in cases involving claims against the Commission, this constitutional limitation precludes payment of any such claim under an unauthorized contract or outside the terms of a legal contract. Spitcaufsky v. State Highway Com'n of Missouri, 349 Mo. 117, 122–123, 159 S.W.2d 647, 651(1, 2). See also Sager v. State Highway Com'n, 349 Mo. 341, 346, 160 S.W.2d 757, 759(1).

■■■■■ The general rule (exceptions to which are not material here) is that the law will leave parties to an illegal agreement in the position in which they put themselves, refusing affirmative relief to either. Temperato v. Horstman, Mo., 321 S.W.2d 657, 666(12); Donovan v. Kansas City, supra, 352 Mo. at 440, 175 S.W.2d at 878(3); Hall v. Bucher, 240 Mo.App. 1239, 1242, 227 S.W.2d 96, 98(2). Otherwise stated, the courts will not enforce an illegal agreement or recognize rights as springing therefrom. 17 Am.Jur.2d, Contracts, § 216, p. 584. Since the new agreement of March 18, 1953, on which instant intervener rests her claim, clearly was illegal, she was entitled to no relief predicated on that agreement, and her amended intervening petition properly was dismissed.

On this appeal, we are concerned only with errors prejudicial to and preserved by intervener, the sole appellant. Schee v. Schee, 319 Mo. 542, 4 S.W.2d 760, 761 (1); Summers v. Cordell, Mo., 187 S.W. 5, 8(4); In re Aiken, 262 Mo. 403, 412, 171 S.W. 342, 344(1). Her claim properly having been denied, intervener is in no position to complain of the judgment in

favor of the Commission and against the County and the present county treasurer, neither of whom appealed. Arrington v. McCluer, 326 Mo. 1011, 34 S.W.2d 67, 73(7); Harrison v. Harrison, Mo.App., 339 S.W.2d 509, 517(13); Jennings v. First Nat. Bank of Kansas City, 225 Mo.App. 232, 30 S.W.2d 1049, 1054(16). See Boatmen's Nat. Bank of St. Louis v. Rogers, 352 Mo. 763, 179 S.W.2d 102, 107(9); Dickinson v. Gault, Mo.App., 229 S.W.2d 283, 284(1).

The motion to transfer for want of appellate jurisdiction is denied and the judgment is, in all respects, affirmed.

RUARK, P. J., and HOGAN, J., concur.