THE PEOPLE OF PUERTO RICO, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, GUILLERMO A. GIL, JUDGE, Respondent; RAFAEL DÍAZ RIVERA, Intervener.

No. O-69-194.      Decided March 3, 1970.

*Gilberto Gierbolini, Solicitor General, J. F. Rodríguez Rivera, Acting Solicitor General, Dolores Ruiz Zambrana,* and *Américo Serra, Assistant Solicitors General,* for petitioner. *Elizabeth Armstrong Watlington* for respondent.

PER CURIAM: Rafael Díaz Rivera was charged with violations of §§ 2, 6, and 8 of the Weapons Law (25 L.P.R.A. §§ 411–454). The violation of § 2 consisted in selling a revolver on May 29, 1968, without having a license authorizing him to perform such sale and in selling a pistol without having such license for selling it.

Upon rendering judgment the judge sustained the defense's contention as to the fact that "said section is not properly defined in the Weapons Law of Puerto Rico" and by virtue thereof he ordered the dismissal of the two charges. Said court erred in so deciding.

At the request of the Solicitor General we issued writ of certiorari in order to review the aforesaid decision of the trial court.

In *People* v. *Superior Court*, 81 P.R.R. 740, 763, 764 (1960), we said that:

"We must not fall into the superficiality of believing that indefiniteness makes a criminal statute void simply because it requires interpretation. As professor Jiménez de Asua points out, all statutes, even the 'very clear ones,' require interpretation. 'Every statute, when applied, is interpreted, since in conforming its contents to the real fact a process of subsumption is created, to which the interpretative organs (sometimes the lawmaker and the scientist and always the judge) contribute, by grammatical and teleological proceedings, and with declarative, restrictive, extensive or progressive results.' As to criminal statutes 'the strict legality of punitive law must be harmonized with the necessary teleological interpretation of juridical standards. Recognizing that criminal law has traits of greater certainty and stability than other branches, it is impossible to believe that penal law, *sensu strictu,* suffices in itself and that it is sufficient to interpret it literally. It is not a complete system without loopholes, so that with the simple logical proceeding, based on the written legal provisions, all questions can be decided.' "

See *Giaccio* v. *Pennsylvania*, 382 U.S. 399, 402, 403 (1966); *Baggett* v. *Bullitt*, 377 U.S. 360, 367 (1964).

In *Jordan* v. *De George*, 341 U.S. 223 (1951), the Supreme Court of the United States said:

"The essential purpose of the 'void for vagueness' doctrine is to warn individuals of the criminal consequences of their conduct. . . . This Court has repeatedly stated that criminal statutes which fail to give due notice that an act has been made

criminal before it is done are unconstitutional deprivations of due process of law. . . . We have several times held that difficulty in determining whether certain marginal offenses are within the meaning of the language under attack as vague does not automatically render a statute unconstitutional for indefiniteness. . . . Impossible standards of specificity are not required. . . . The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices."

Let us examine now § 2 of the Weapons Law (25 L.P.R.A. § 412) in the light of the doctrine previously stated. Said section provides that:

"Ammunition may be manufactured or caused to be manufactured, or imported, offered, sold, lent, or transferred, provided a license is held therefor under this act; *any* gun, *revolver, pistol* or any firearm or any airgun, spring gun or other instrument or weapon in which the propelling force is a spring or air, or any instrument or weapon of the kind commonly known as a toy pistol or in or upon which any blank cartridges are used, or may be used, or any loaded or blank cartridges or ammunition therefor, *may* also *be* manufactured or caused to be manufactured, imported, offered, *sold,* hired, lent, or transferred, *provided a license under this act is held therefor.* No weapons or instruments of those commonly known as blackjacks, bludgeons, or brass knuckles, shall be manufactured, caused to be manufactured, or imported, sold or held for sale, offered, or delivered to any person, or disposed of. *Any violation of the provisions of this section shall constitute a misdemeanor.*" (Italics ours.)

This provision affirmatively provides that, among other things, any revolver or pistol may be sold, "provided a license is held" therefor under the Weapons Law (§§ 22–26, 25 L.P.R.A. §§ 432–436) and that a violation thereof shall constitute a misdemeanor. This means, clearly in our opinion, that selling it without having a license is the violation which constitutes the offense. Said provision offers to a person of average intelligence a clear and precise notification that sell-

ing one or more of such weapons is a forbidden act constituting an offense, unless the person obtains previously a license in order to perform said selling activity. As the Solicitor General points out:

". . . The fact that the statute is drafted in an affirmative manner cannot have the effect of rendering inoperative the prohibition clearly outlined. On the contrary, it is a rule of statutory construction that an affirmative statute which provides that an act shall be done in a certain manner, means that that act shall not be done in any other manner; and it is so even though the statute may not contain negative words prohibiting that the act be performed in that other manner. Crawford, Statutory Construction 525, § 263. In 2 Sutherland, Statutory Construction 212, 213, § 2703, 3rd ed., the cited rule is thus stated:

'. . . if the statute directs an act to be done in a particular form or manner it excludes every other manner, and thus because it introduces a new rule although phrased in the affirmative, it implies a negative.'

'. . . affirmative words which are imperative and therefore mandatory imply a negative of anything contrary or alternative to its requirement.'

"And in *State* v. *County of Camden,* 394 S.W.2d 71, 77 (Mo. 1965), the court expounds it in the following manner:

'. . . Where a statute "limits the doing of a particular thing in a prescribed manner, it necessarily includes in the power granted the negative that it cannot be otherwise done." '

"As in offenses of possession, bearing and transportation of firearms, *selling* a firearm, if one has a license therefor issued according to law, is lawfully permissible; and its validity depends on the compliance with the requirement of obtaining the license." *Cf. Morales Merced* v. *Superior Court,* 93 P.R.R. 411, 417 (1966)."

Originally, Act No. 17 of 1951 provided that the one who (among other things) sells a revolver or pistol without having a license therefor would be guilty of a misdemeanor. By Act No. 54 of June 18, 1959, §§ 2, 11, and 26 of the Weapons Law were amended for the sole purpose of permit-

ting the manufacture and sale of weapons and ammunitions for exportation purposes. The judiciary committees of the House of Representatives and of the Senate of Puerto Rico made specific declarations that such was the sole purpose of the amendments. Obviously there was no intention or any purpose whatsoever of making permissible the sale of said firearms without a license therefor, but that, on the contrary, upon drafting the statute again it was sought to maintain the former control of the firearms trade, and more specifically, the prohibition of the sale thereof without having obtained previously the license for such activity.

Therefore, the order of the Superior Court, San Juan Part, entered in cases Nos. 68-1781 and 1782 should be set aside. By virtue thereof, the record will be remanded to said court in order that the same may render the judgment which in its opinion is proper in said case.

Mr. Chief Justice Negrón Fernández did not participate herein.