EL PUEBLO DE PUERTO RICO, peticionario, *v.* TRIBUNAL SUPERIOR, SALA DE SAN JUAN, HON. GUILLERMO A. GIL, JUEZ, demandado; RAFAEL DÍAZ RIVERA, interventor.

*Número:* O-69-194    *Resuelto:* 3 de marzo de 1970

*Gilberto Gierbolini, Procurador General, J. F. Rodríguez Rivera, Procurador General Interino, Dolores Ruiz de Zambrana* y *Américo Serra, Procuradores Generales Auxiliares,* abogados del peticionario; *Elizabeth Armstrong de Watlington,* abogada del demandado.

PER CURIAM: Rafael Díaz Rivera fue acusado de infracciones a los arts. 2, 6 y 8 de la Ley de Armas (25 L.P.R.A. secs. 411–454). La infracción al Art. 2 consistió en vender un revólver en 29 de mayo de 1968 sin estar provisto de una licencia que lo autorizara a realizar tal venta y de vender una pistola sin estar provisto de tal licencia para venderla.

En el acto de pronunciar sentencia el juez declaró con lugar el planteamiento de la defensa en cuanto "a que dicho artículo no está debidamente definido en la Ley de Armas de Puerto Rico" y en tal virtud ordenó el archivo y sobreseimiento de los dos cargos. Incidió dicho tribunal al así dictaminar.

A solicitud del Procurador General expedimos el auto de *certiorari* para revisar la referida actuación del tribunal de instancia.

Dijimos en *Pueblo* v. *Tribunal Superior*, 81 D.P.R. 763, 788 (1960), que:

"No debe caerse en la superficialidad de creer que una ley penal es nula por defecto de vaguedad debido a que requiera interpretación. Como señala el maestro Jiménez de Asúa, todas las leyes, aun las 'clarísimas', requieren interpretación. 'Toda ley, por el hecho de aplicarse es interpretada, ya que al cotejar su contenido con el hecho real se produce un proceso de subsunción, al que contribuyen los órganos interpretativos (a veces el legislador y el científico y siempre el juez), por procedimientos gramaticales y teleológicos, y con resultados declarativos, restrictivos, extensivos o progresivos.' En cuanto a las leyes penales 'hay que armonizar la estricta legalidad del Derecho punitivo, con la imprescindible interpretación teleológica de las normas jurídicas. Reconociendo que el Derecho penal tiene caracteres de mayor certidumbre y estabilidad que las otras ramas, es imposible creer que la ley penal, *sensu strictu,* se basta del todo así misma y que sea suficiente interpretarla a la letra. No es un sistema completo y sin lagunas, de modo que con el simple procedimiento lógico, basado en los preceptos legales escritos, se puedan resolver todas las cuestiones.' "

Véanse *Giaccio* v. *Pennsylvania*, 382 U.S. 399, 402–403 (1966); *Baggett* v. *Bullitt*, 377 U.S. 360, 367 (1964).

En *Jordan* v. *George*, 341 U.S. 223 (1951), dijo el Tribunal Supremo de los Estados Unidos:

"El propósito esencial de la doctrina de nulidad por vaguedad es el dar aviso a los individuos de la consecuencia penal de su conducta . . . . Este tribunal repetidamente ha dicho que los estatutos penales que no dan un aviso adecuado de que un acto ha sido declarado punible antes de realizarse, constituyen una privación inconstitucional del debido proceso de ley . . . . En varias ocasiones hemos sostenido que la dificultad en determinar si las ofensas marginales caen dentro del significado del lenguaje atacado por vago no significa que automáticamente el

estatuto es inconstitucional por ser indeterminado . . . . No se requieren normas imposibles de especificación. La prueba es si el lenguaje da un aviso definido con respecto a la conducta proscrita de acuerdo al significado y práctica comunes."

Examinemos ahora el Art. 2 de la Ley de Armas (25 L.P.R.A. sec. 412) a la luz de la doctrina relacionada previamente. Dicho artículo dispone que:

"Se podrá fabricar o hacer fabricar, importar, ofrecer, vender, prestar o traspasar municiones, siempre y cuando se posea licencia bajo esta ley para ello; como también *se podrá* fabricar o hacer fabricar, importar, ofrecer, *vender*, alquilar, prestar, traspasar *cualquier* escopeta, *revólver, pistola,* o cualquier arma de fuego o escopeta de aire, escopeta de muelle o cualquier otro instrumento o arma en la cual la fuerza propulsora sea un muelle o aire o cualquier instrumento o arma de los comúnmente conocidos como pistola de juguete dentro o en la cual se usen cartuchos sin balas, o puedan usarse cartuchos en blanco o cargados, o municiones, *siempre y cuando se posea licencia bajo esta ley para ello*. No se podrá fabricar ni hacer fabricar, importar, vender o tener para la venta, ofrecer, entregar a cualquier persona o disponer de cualesquiera de las armas o instrumentos de los comúnmente conocidos como blackjacks, cachiporra, o manoplas. *Toda infracción a las disposiciones de este artículo constituirá delito menos grave.*" (Énfasis nuestro.)

Esta disposición provee afirmativamente que, entre otras cosas, se podrá vender cualquier revólver o pistola "siempre y cuando se posea licencia" para ello bajo la Ley de Armas (Arts. 22–26—25 L.P.R.A. secs. 432–436) y que su infracción constituirá delito menos grave. Esto quiere decir, claramente a nuestro juicio, que el venderla sin licencia es la infracción que constituye el delito. Dicha disposición ofrece a una persona de inteligencia ordinaria una notificación clara y precisa de que el vender una o más de tales armas es un acto prohibido constituyente de delito, a no ser que la persona obtenga previamente una licencia para realizar tal actividad de venta. Como indica el Procurador General

". . . El hecho de que el estatuto esté redactado en forma afirmativa no puede tener el efecto de hacer inoperante la prohibición claramente delineada. Por el contrario, es regla de hermeneútica legal que un estatuto afirmativo que dispone que un acto debe hacerse de cierta manera, significa que ese acto no puede hacerse de otra forma; y ello es así aunque el estatuto no contenga palabras negativas prohibiendo que el acto se realice de esa otra forma. Crawford, *Statutory Construction*, sec. 263, pág. 525. En Sutherland, *Statutory Construction*, 3ra. ed., vol. 2, sec. 2703, págs. 212–213, se expresa la citada regla así:

'. . . if the statute directs an act to be done in a particular form or manner it excludes every other manner, and thus because it introduces a new rule although phrased in the affirmative, it implies a negative.'

'. . . affirmative words which are imperative and therefore mandatory imply a negative of anything contrary or alternative to its requirement.'

Y en *State* v. *County of Camden*, 394 S.W.2d 71, 77 (Mo. 1965), el tribunal lo expresa de la siguiente manera:

'. . . Where a statute "limits the doing of a particular thing in a prescribed manner, it necessarily includes in the power granted the negative that it cannot be otherwise done".'

Al igual que en los delitos de posesión, portación y transportación de armas de fuego, la *venta* de un arma de fuego, si se tiene licencia para ello expedida en forma de ley, es un acto legítimamente permitido; y su validez depende del cumplimiento del requisito de la obtención de licencia. Cf. *Morales Merced* v. *Tribunal Superior*, 93 D.P.R. 423, 429 (1966)."

Originalmente la Ley Núm. 17 de 1951 proveía que el que (entre otras cosas) vendiese un revólver o pistola sin tener licencia para ello sería culpable de delito menos grave. Por la Ley Núm. 54 de 18 de junio de 1959 se enmendaron los Arts. 2, 11 y 26 de la Ley de Armas a los únicos fines de permitir la manufactura y venta de armas y municiones para fines de exportación. Las Comisiones de lo Jurídico de la Cámara de Representantes y del Senado de Puerto Rico

hicieron manifestaciones específicas que tal era el único propósito de las enmiendas. Obviamente no hubo intención o propósito alguno de hacer permisible la venta de tales armas de fuego sin licencia para ello, sino que, por el contrario, al redactarse de nuevo el estatuto se quiso mantener el anterior control del tráfico en armas de fuego, y más específicamente, la prohibición de su venta sin antes haber obtenido la licencia prescrita para tal actividad.

*Por lo tanto, debe anularse la resolución del Tribunal Superior, Sala de San Juan, dictada en los casos Núms. 68-1781 y 1782. En tal virtud, se devolverá el expediente a dicho tribunal con el propósito de que el mismo dicte la sentencia que a su juicio proceda en dicha causa.*

El Juez Presidente Señor Negrón Fernández no intervino.